UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACOB MORTERA, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 3485 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Jacob Mortera brought this negligence suit against Target Corporation in the Circuit Court of Cook County, Illinois, alleging injuries from a slip and fall on its premises. Doc. 1-1. Target removed the suit under the diversity jurisdiction, Doc. 1, and, with fact discovery closed, moves for summary judgment, Doc. 26. The motion is granted.

### Background

Consistent with the local rules, Target filed a Local Rule 56.1(a)(3) statement of undisputed facts along with its summary judgment motion. Doc. 23. The relevant factual assertions in the Local Rule 56.1(a)(3) statement cite evidentiary material in the record and are supported by the cited material. *See* N.D. Ill. L.R. 56.1(a) ("The statement referred to in (3) shall consist of short numbered paragraphs, including within each paragraph specific references to the affidavits, parts of the record, and other supporting materials relied upon to support the facts set forth in that paragraph.").

In response to Target's motion, Mortera filed a brief, Doc. 27, and a Local Rule 56.1(b)(3)(C) statement of additional facts, Doc. 28, but not a Local Rule 56.1(b)(3)(B) response to Target's Local Rule 56.1(a)(3) statement. Mortera accordingly failed to comply with Local

Rule 56.1(b)(3)(B), which requires the nonmovant to file "a response *to each numbered paragraph* in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B) (emphasis added). Mortera's Local Rule 56.1(b)(3)(C) statement does not and could not properly controvert "each numbered paragraph" of Target's Local Rule 56.1(a)(3) statement because it does not sync up with the factual assertions in the Local Rule 56.1(a)(3) statement. It follows that the factual assertions in Target's Local Rule 56.1(a)(3) statement are deemed admitted.

This result is in accord with *Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635 (7th Cir. 2008). The defendant in *Ciomber* moved for summary judgment and filed a Local Rule 56.1(a)(3) statement. *Id*. at 643. As part of his opposition, the plaintiff filed a "Rule 56.1 response … that … did not separate his proposed facts from his responses to [the defendant's] proposed material facts." *Ibid*. "[T]he district court refused to consider the facts proposed in [the plaintiff's] Rule 56.1 response," and the Seventh Circuit affirmed, holding that because the response did not comply with Local Rule 56.1(b)(3)(B), "the district court did not err by refusing to consider the facts he proposed." *Id*. at 643-44; *see also Olivet Baptist Church v. Church Mut. Ins. Co.*, 2016 WL 772787, at *1-2 (N.D. Ill. Feb. 29, 2016) (deeming admitted the facts asserted in the defendant's Local Rule 56.1(a)(3) statement where the plaintiff failed to file a Local Rule 56.1(b)(3)(B) response and instead attempted to treat a Local Rule 56.1(b)(3)(C) statement as a "global[]" response to the factual assertions in the Local Rule 56.1(a)(3) statement), *aff'd*, 672 F. App'x 607 (7th Cir. 2017).

The same result obtains here. The Seventh Circuit "has consistently upheld district judges' discretion to require strict compliance with Local Rule 56.1." *Flint v. City of Belvidere*,

791 F.3d 764, 767 (7th Cir. 2015) (citing cases); *see also Stevo v. Frasor*, 662 F.3d 880, 886-87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings."). Here, Mortera failed entirely to comply with Local Rule 56.1(b)(3)(B). This court need not and will not attempt to map the factual assertions in Mortera's Local Rule 56.1(b)(3)(C) statement onto the assertions in Target's Local Rule 56.1(a)(3) statement to determine whether Mortera has adduced a genuine dispute of material fact as to any of Target's assertions; that is the purpose of a properly constructed Local Rule 56.1(b)(3)(B) response. *See Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015) ("The purpose of Rule 56.1 is to have the litigants present to the district court a clear, concise list of material facts that are central to the summary judgment determination. It is the litigants' duty to *clearly identify material facts in dispute* and provide the admissible evidence that tends to prove or disprove the proffered fact. A litigant who denies a material fact is required to provide the admissible evidence that supports his denial in a *clear, concise, and obvious fashion, for quick reference of the court*. The district court did not abuse its discretion in finding Curtis failed to comply with Rule 56.1 requirements.") (emphasis added); *Cracco v. Vitran Express, Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) ("Because of the important function local rules like Rule 56.1 serve in organizing the evidence and identifying disputed facts, we have consistently upheld the district court's discretion to require strict compliance with those rules.") (internal quotation marks omitted). Accordingly, the court accepts as true the facts asserted in Target's Local Rule 56.1(a)(3) statement. *See Curtis*, 807 F.3d at 218 ("When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts

3

are deemed admitted for purposes of the motion.") (internal quotation marks omitted); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010); *Rao v. BP Prods. N. Am., Inc.*, 589 F.3d 389, 393 (7th Cir. 2009); *Olivet Baptist Church*, 2016 WL 772787, at *1-2 (reaching the same result in materially identical circumstances).

The following facts are stated as favorably to Mortera as permitted by the record and Local Rule 56.1. *See Woods v. City of Berwyn*, 803 F.3d 865, 867 (7th Cir. 2015). In considering Target's motion, the court must assume the truth of those facts, but does not vouch for them. *See Arroyo v. Volvo Grp. N. Am.*, 805 F.3d 278, 281 (7th Cir. 2015).

On January 1, 2016, Mortera entered a Target store, bought a soda, and went to the men's restroom. Doc. 23 at ¶¶ 6-7, 9, 12; Doc. 30 at ¶ 5. He opened the restroom door, took three steps, and slipped and fell, hitting his head and losing consciousness. Doc. 23 at ¶ 13; Doc. 30 at ¶ 14. When Mortera came to, he realized that he had slipped on water, which was in puddles covering most of the restroom floor. Doc. 23 at ¶¶ 17, 26. He does not know where the water came from or how long it was on the floor before he fell, nor did he observe anything about the water that would help answer those questions. *Id*. at ¶¶ 20-21. Mortera did not see anything leaking inside or outside the restroom before he fell. *Id*. at ¶ 24. He did not see anyone cleaning or mopping. *Id*. at ¶ 23. An employee who helped Mortera after his fall did not see any ceiling leaks or water spilled over from sinks. Doc. 30 at ¶ 33. At the time of the fall, the store was not busy. *Id*. at ¶ 55.

Target employee Alberto Butkus heard the fall happen at around 10:40 p.m. Doc. 23 at ¶¶ 32-33. (Although Mortera's Local Rule 56.1(b)(3)(C) statement asserts that he entered the store at 10:30 p.m., Doc. 30 at ¶ 5, that assertion does not contradict Butkus's account of when the fall occurred.) No more than five minutes before the fall, Butkus had been in the restroom

4

and walked through the area where Mortera later fell. Doc. 23 at ¶¶ 36, 40-41. At that time, there was no water, soda, or other substance on the floor, and the floor was not slippery. *Id.* at ¶¶ 37-38, 45. Before the fall, nobody told Butkus anything about the condition of the restroom floor, and he was unaware of any liquid on the floor or of any prior accidents or complaints involving any substance in the restroom. *Id.* at ¶¶ 39, 42. Butkus did not see any signs of plumbing issues, spills from sinks, or water tracked in by customers. *Id.* at ¶ 34.

Another Target employee, Angel Hernandez, cleaned the restroom at 10:30 p.m., minutes before Butkus entered. Doc. 23 at ¶¶ 46, 48. Hernandez did not use soap or any other cleaning fluid. *Id.* at ¶ 51. Hernandez's regular practice is to leave a wet floor sign up after cleaning the restroom to show that it has been cleaned and to alert customers to the possibility that other customers may drip water on the floor when washing their hands. *Id.* at ¶¶ 49-50. Despite the sign, Hernandez would not have left the restroom after cleaning it without first ensuring that the floor was clean and dry. *Id.* at ¶ 52. By the time Butkus entered the restroom, the floor was no longer wet from its prior cleaning. *Id.* at ¶ 43.

## Discussion

The parties agree that Illinois law governs this suit. *See Piotrowski v. Menard, Inc.*, 842 F.3d 1035, 1038 (7th Cir. 2016). Under Illinois law, a "plaintiff … who alleges that the defendant was negligent must show a duty owed by the defendant, a breach of that duty, and injury that was proximately caused by the breach." *Ibid*. Mortera alleges that Target owed him a duty of reasonable care as an invitee onto its premises, and that it breached that duty either by negligently creating the wet conditions in the restroom or by failing to clean up the water despite having actual or constructive notice thereof. Doc. 27 at ¶¶ 7-18.

5

Under Illinois law, Target, as a property owner, owed invitees like Mortera "a duty to maintain the premises in a reasonably safe condition." *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 811 (7th Cir. 2017); *see also Newsom-Bogan v. Wendy's Old Fashioned Hamburgers of N.Y., Inc.*, 953 N.E.2d 427, 431 (Ill. App. 2011) (same). "When a business's invitee is injured by slipping on a foreign substance, the business can be liable if the invitee establishes that: (1) the substance was placed there by the negligence of the business; (2) the business had actual notice of the substance; or (3) the business had constructive notice of the substance." *Piotrowski*, 842 F.3d at 1038. Because the record evidence would not permit a reasonable juror to find liability under any of these three theories, Target is entitled to summary judgment.

## I. The Summary Judgment Record Would Not Permit a Reasonable Juror to Find that Target Created the Dangerous Condition.

As to the first theory of liability, "[t]o prove that the defendant business, as opposed to a third person, created the dangerous condition," the plaintiff must "(1) show that the foreign substance was related to the defendant's business and (2) 'offer[] some further evidence … from which it could be inferred that it was more likely that defendant or his servants, rather than a customer, dropped the substance on the premises.'" *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649-50 (7th Cir. 2014) (first alteration in original) (quoting *Donoho v. O'Connell's, Inc.*, 148 N.E.2d 434, 439 (Ill. 1958)). Mortera cannot satisfy the second requirement, for the summary judgment record would not permit a reasonable juror to find that it was more likely than not that Target created the puddles of water on which he slipped.

Lacking evidence of the actual source of the water, Mortera invokes the process of elimination: He contends that he can refute every possible source of the water *other than* Target's negligence. Doc. 27 at ¶¶ 9-12. Mortera's process-of-elimination argument submits that if the water was not tracked in by customers, and if there were no plumbing issues, ceiling

6

leaks, or spills from sinks, then the only "possible source[] of the water … [was Target's] own operations." Doc. 27 at ¶¶ 9-12. Mortera's conclusion does not follow from his premise. The fact that a customer was not the source of the water via certain specified mechanisms—tracking it in, spilling it from a sink—does not mean that a customer was not the source via some *other* mechanism. More to the point, Mortera adduces no evidence that any Target employee was inside the restroom in the five minutes between Butkus's observation that the floor was dry and Mortera's fall—or that Target somehow created the puddles during that span. On this record, a reasonable juror could do no more than speculate as to the water's source, and such speculation cannot forestall summary judgment under the first theory of liability. *See Piotrowski*, 842 F.3d at 1039 (in holding that the defendant was entitled to summary judgment, reasoning that because the plaintiff did not "see the rocks [that injured her] fall, and neither she nor anyone else to whom she points knew how the rocks at issue ended up where they did," she could only speculate that an employee of the defendant "could have caused the rocks to spill"); *Zuppardi*, 770 F.3d at 650 ("Zuppardi does not come close to setting forth sufficient evidence, either direct or circumstantial, to create an inference that Wal-Mart caused the spill. She did not see the water prior to the fall nor did she know how the water accumulated."); *Culli v. Marathon Petroleum Co.*, 862 F.2d 119, 123 (7th Cir. 1988) (noting that summary judgment is appropriate where "[t]here was no evidence that the defendants placed the substance on their property").

At one point in his opposition, Mortera asserts that "the only possible source of the water" was Target's mopping the restroom floor before his fall. Doc. 27 at ¶ 12. That possibility is refuted by what the record indisputably shows about what happened and did not happen in the interim: Ten minutes before the fall, Hernandez left the restroom floor clean and dry, Doc. 23 at ¶¶ 48, 52, and five minutes before the fall, Butkus saw that the floor was dry, *id*. at ¶¶ 36-38, 45.

7

Given those facts—which, as noted, are deemed admitted due to Mortera's violation of Local Rule 56.1(b)(3)(B)—no reasonable juror could find that the mopping was the source of the water on which he slipped and fell.

## II. The Summary Judgment Record Would Not Permit a Reasonable Juror to Find that Target Had Actual Notice of the Dangerous Condition.

For similar reasons, the summary judgment record would not allow a reasonable juror to find that Target had actual notice of the water on the floor under the second theory of liability. Mortera's argument that Target knew about the water relies solely on the presence of a wet floor sign in the restroom. Doc. 27 at ¶¶ 13-18. That argument crumbles against the undisputed facts that Hernandez put up the sign even though the floor was *not* wet to show that the restroom had been cleaned, and that despite the sign, there was no water on the floor when Butkus used the restroom five minutes before Mortera's fall. Doc. 23 at ¶¶ 36-38, 43, 49-52.

Nothing else in the record suggests that Target had actual knowledge of the water. To the contrary, the record indisputably establishes that, in the five minutes between Butkus observing a dry floor and Mortera slipping and falling on a wet floor, nobody said anything to Butkus about the floor's condition. *Id*. at ¶¶ 35-39, 43-44. And lacking evidence that some *other* employee knew about the water, Mortera cannot establish a genuine issue of material fact as to actual notice. *Compare Pavlik v. Wal-Mart Stores, Inc.*, 753 N.E.2d 1007, 1010-12 (Ill. App. 2001) (holding that testimony that a store "employee remarked 'oh, she was supposed to clean [the spill] up and she didn't,'" demonstrated that store employees had actual knowledge of the spill that caused the plaintiff's injury), *with Darmo v. Target Corp.*, 2016 WL 1161282, at *4-5 (N.D. Ill. Mar. 23, 2016) (holding that there was no triable issue as to actual notice where "there [was] no evidence, disputed or otherwise, that any Target security officer saw the spilled water or otherwise knew that a spill had occurred"), *motion for reconsideration granted on other grounds*,

8

2016 WL 5871486 (N.D. Ill. Oct. 7, 2016); *Carlson v. Wal-Mart Stores, Inc.*, 2007 WL 4569867, at *5 (N.D. Ill. Dec. 21, 2007) (granting summary judgment as to actual knowledge where there was no evidence that the defendant's employee "knew about the slippery area where [the plaintiff] fell" before the fall); *Byrd-Tolson v. Supervalu, Inc.*, 500 F. Supp. 2d 962, 971 (N.D. Ill. 2007) ("Since Plaintiff has not provided any evidence that any store employees were aware of the substance she slipped on, she has not demonstrated actual notice."); *and Erkol v. Marshall Field & Co.*, 1989 WL 18248, at *2 (N.D. Ill. Mar. 1, 1989) (same).

### III. The Summary Judgment Record Would Not Permit a Reasonable Juror to Find that Target Had Constructive Notice of the Dangerous Condition.

The remaining liability theory is constructive notice. "Constructive notice can be established in Illinois [1] by presenting evidence that the dangerous condition was present for a sufficient length of time such that in the exercise of ordinary care its presence should have been discovered, or [2] by showing that the dangerous condition was part of a pattern of conduct or a recurring incident." *Piotrowski*, 842 F.3d at 1040; *see also Zuppardi*, 770 F.3d at 651 (same); *Culli*, 862 F.2d at 123 (same, citing Illinois cases).

Mortera cannot succeed under the first method. Because there was no water on the floor when Butkus visited the restroom, the longest the water could have been there is the five minutes between Butkus's visit and Mortera's fall. Doc. 23 at ¶¶ 36-38, 43. Five minutes is not long enough to provide Target with constructive notice of water on the restroom floor, especially when the store was not busy. *See Zuppardi*, 770 F.3d at 651-52 ("Zuppardi has presented no circumstances in this case that would allow a reasonable person to conclude that a few minutes was enough time to give Wal-Mart constructive notice of the puddle. Although there is no bright-line rule designating the requisite time to establish constructive notice, periods in excess of ten minutes have failed the test.") (internal quotation marks omitted); *Reid v. Kohl's Dep't*

*Stores, Inc.*, 545 F.3d 479, 481-83 (7th Cir. 2008) (holding that "ten minutes was not enough to give Kohl's constructive notice" of a spill in an aisle at a time when "very few customers were in the store"); *Hresil v. Sears, Roebuck & Co.*, 403 N.E.2d 678, 680 (Ill. App. 1980) (holding, "as a matter of law, that ten minutes was an insufficient period of time to give constructive notice to the operator of this self-service store of the presence of the foreign substance," at least when the store was not busy, and noting that a contrary conclusion "would place upon the store the unfair requirement of the constant patrolling of its aisles").

Mortera attempts to escape this conclusion by placing an implausible spin on Butkus's unrefuted testimony that the floor was dry when he was in the restroom five minutes before the fall. Doc. 27 at ¶¶ 16-18. Mortera acknowledges that Butkus did not see the water. *Ibid*. But relying solely on the unsupported premise—addressed and rejected above—that "the only [possible] source of the water on the restroom floor was [Target's] cleaning operations," Mortera concludes that "the water would clearly have been present" when Butkus visited the restroom, so he must have unreasonably failed to see it. *Ibid*. That argument fails because it cannot be reconciled with the undisputed facts, deemed admitted under Local Rule 56.1, that "[t]here was no water, orange soda or any other foreign substance on the ground when Mr. Butkus walked through the bathroom five minutes or less before [Mortera's] accident," and that Butkus "would have noticed" if those substances had been on the floor. Doc. 23 at ¶¶ 37, 45. Mortera makes the same argument as to Hernandez's earlier cleaning, Doc. 27 at ¶¶ 16-18, which similarly fails; in any event, Butkus's intervening visit sets the timeline for constructive notice.

As for the second method of establishing constructive notice, Mortera makes no attempt to argue that the dangerous condition resulting in his injury was consistent with "a pattern of dangerous conditions or a recurring incident which was not attended to within a reasonable

10

period of time." *Piotrowski*, 842 F.3d at 1040. He accordingly has forfeited that theory of constructive notice. *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Keck Garrett & Assocs. v. Nextel Commc'ns, Inc.*, 517 F.3d 476, 487 (7th Cir. 2008) ("Nextel specifically requested summary judgment on the quantum meruit claim. Keck Garrett, however, did not defend that claim in its reply to Nextel's motion for summary judgment. By failing to present its argument to the district court, Keck Garrett abandoned its claim."); *Witte v. Wis. Dep't of Corr.*, 434 F.3d 1031, 1038 (7th Cir. 2006) ("By failing to raise [an argument] in his brief opposing summary judgment, [the plaintiff] lost the opportunity to urge it in both the district court and this court."), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013). In any event, there is no record evidence of any other incident, much less a pattern of other incidents.

## Conclusion

Target's summary judgment motion is granted. Judgment will be entered in favor of Target and against Mortera.

August 8, 2018

United States District Judge

11