UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JACOB MORTERA, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 3485 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Jacob Mortera brought this negligence suit against Target Corporation in the Circuit Court of Cook County, Illinois, alleging injuries from a slip and fall. Doc. 1-1. After Target removed the suit under the diversity jurisdiction, Doc. 1, the court granted summary judgment for Target, Docs. 34-35 (reported at 2018 WL 3753301 (N.D. Ill. Aug. 8, 2018)), and denied reconsideration, Doc. 39. Target has filed a bill of costs seeking $8,969.21 under Civil Rule 54(d)(1) and 28 U.S.C. § 1920. Doc. 40. Mortera opposes costs on the ground that he is indigent; in the alternative, he objects to various entries in Target's bill. Doc. 43. The court awards Target $3,141.99 in costs.

A prevailing party "presumptively receives the costs of litigation and it is the losing party's burden to overcome this presumption." *Johnson v. Target Corp.*, 487 F. App'x 298, 301 (7th Cir. 2012). But "it is within the discretion of the district court to consider a plaintiff's indigenc[e] in denying costs under Rule 54(d)." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006) (internal quotation marks omitted). *Rivera* directs district courts to undertake a two-step analysis when presented with a claim of indigence:

> First, the district court must make a threshold factual finding that the losing
> party is incapable of paying the court-imposed costs at this time or in the

> future.  The burden is on the losing party to provide the district court with
> sufficient documentation to support such a finding.  This documentation
> should include evidence in the form of an affidavit or other documentary
> evidence of both income and assets, as well as a schedule of expenses.
> Requiring a non-prevailing party to provide information about both
> income/assets and expenses will ensure that district courts have clear proof of
> the non-prevailing party's dire financial circumstances.  Moreover, it will
> limit any incentive for litigants of modest means to portray themselves as
> indigent.
>
> Second, the district court should consider the amount of costs, the good faith
> of the losing party, and the closeness and difficulty of the issues raised by a
> case when using its discretion to deny costs.  No one factor is determinative,
> but the district court should provide an explanation for its decision to award or
> deny costs.

*Id*. at 635-36 (citations and internal quotation marks omitted).

Mortera's indigency claim fails at the first step, as he has not made the threshold showing that he "is incapable of paying the court-imposed costs at this time or in the future."  The only documentation Mortera provides is an affidavit addressing his inability to return to his job as a bus driver and identifying his income, assets, and debts.  Doc. 43 at 4.  However, he does not provide any information about his current expenses, and thus cannot establish that he is indigent. *See Rivera*, 469 F.3d at 635 (holding that a losing party claiming indigence must "provide information about both income/assets and expenses").  In any event, Mortera makes no argument regarding the second step of the *Rivera* analysis—the amount of costs, his good faith, and the closeness or difficulty of the issues—and thus forfeits his contention that he should be excused from paying costs due to indigency.  *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("We apply [the forfeiture] rule where a party fails to develop arguments related to a discrete issue … ."); *Allen v. City of Chicago*, 2013 WL 1966363, at *2 (N.D. Ill. May 10, 2013).

The court turns next to Mortera's objections to specific costs that Target seeks to recoup. A court awarding costs must ask first "whether the cost imposed on the losing party is recoverable" under 28 U.S.C. § 1920 and, "if so, whether the amount assessed for that item was reasonable." *Majeske v. City of Chicago*, 218 F.3d 816, 824 (7th Cir. 2000). Recoverable costs include (1) "[f]ees of the clerk and marshal"; (2) fees for "transcripts necessarily obtained for use in the case"; (3) "[f]ees and disbursements for printing and witnesses"; (4) "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case"; (5) "[d]ocket fees"; and (6) "[c]ompensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services." 28 U.S.C. § 1920. "Although a district court has discretion when awarding costs, the discretion is narrowly confined because of the strong presumption created by Rule 54(d)(1) that the prevailing party will recover costs." *Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir. 1997) (citation and internal quotation marks omitted).

Mortera objects to the $6,901.95 billed for subpoenaing and obtaining medical records from nonparties, arguing that the invoices Target submitted to support those costs—from vendors Record Copy Services and iCopy—are inadequate. Doc. 43 at 2-3.

The court agrees with Mortera that the Record Copy Services invoices are too vague to support a cost award. Each invoice lists only the medical provider, the total amount charged, and a "code," which is a series of letters indicating the types of fees included in the total but not their individual amounts. *E.g.*, Doc. 40-1 at 11 (listing, as do most of the Record Copy Services invoices, the code "SDCLZE," which translates to "subpoena fee, subpoena services, copies, location copying, disk copying, and expedited services"). The court cannot determine from those barebones invoices whether the charged costs were reasonable and necessary. How many pages

3

were copied? What was the vendor's markup to the charges it paid to the various medical providers? Why did Target pay for "expedited services" for nearly every subpoena, *id*. at 11-15, 25, 34, 38, 47-52, 54-56, 59-60, 64-65, 71-72, and how much did that cost? What are "special services," *id*. at 37?

Target's answer is that it "produced the invoices that the vendor provided" and that "there is insufficient evidence to say that the charges incurred were unreasonable." Doc. 44 at 5. But Target gets the burden backward, for as the party seeking costs, it—and not Mortera—"is responsible for proving that the specific costs that it seeks to recover were reasonable and necessary." *See United States ex rel. Marshall v. Woodward Governor Co.*, 2016 WL 2755324, at *6 (N.D. Ill. May 12, 2016); *see also Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 969 (N.D. Ill. 2010) ("The prevailing party has the burden of demonstrating the amount of its recoverable costs.") (internal quotation marks omitted). Because the Record Copy Services invoices are insufficient to meet that burden, Target has not adequately justified the Record Copy Services costs. *See Montanez v. Simon*, 755 F.3d 547, 559 (7th Cir. 2014) ("[I]t was not the judge's responsibility to make up for the lawyers' lack of documentation."); *Harper v. City of Chi. Heights*, 223 F.3d 593, 605 (7th Cir. 2000) ("[W]hen a fee petition is vague or inadequately documented, a district court may … strike the problematic entries … ."); *Rodriguez v. Ithal*, 2003 WL 22284202, at *4 (N.D. Ill. Oct. 2, 2003) ("[T]he Record Copy Services invoices … are too vague to support recovery. The invoices do not list the number of pages copied, nor do they reflect the rate. The invoices do not break[ down] costs associated with service of each subpoena. Without these figures, it is impossible to determine whether the costs [were reasonable] … ."). The bill of costs is therefore reduced by $5,022.70, which is the amount Target paid Record Copy Services.

That leaves the iCopy invoices, which total $1,878.80. (Although Target claims $6,901.95 in subpoena and records processing fees, Doc. 40 at 1, that figure includes an unexplained $0.45, as the supporting invoices total only $6,901.50, Doc. 40-1 at 10-75.) Mortera first objects that "many" of the iCopy invoices "do not have a per page copying charge listed." Doc. 43 at 2. But each invoice lists the number of pages and breaks down the fees. *E.g.*, Doc. 40-1 at 44 (invoice listing a page count, subpoena fee, expedited procurement fee, records processing fee, and a fee charged by the deponent). True, most of the invoices do not say how much iCopy billed per page, but that is because it only twice charged by the page. *Compare ibid.* (typical invoice listing only flat fees), *with id.* at 31 (invoice indicating that iCopy charged $0.05 per page for optical character recognition ("OCR") and a $0.38 per page records processing fee, in addition to the deponent's $22 fee, a $46 subpoena fee, and a $30 fee for expedited service), *and id.* at 40 (similar).

Mortera next objects that where iCopy's charge per page can be calculated, it is "outrageous," citing three examples: $104.98 for eight pages from one medical provider, *id.* at 21; $109.43 for six pages from another provider, *id.* at 23; and $96.00 for four pages from a third provider, *id.* at 42. Mortera characterizes those invoices as charging $13.12 per page, $18.24 per page, and $24.00 per page, respectively. Doc. 43 at 2-3. Dividing the total cost by the number of pages produces those figures, but those figures do not fairly summarize the invoices. The $104.98 invoice breaks down the charges into three categories: a $48 fee for serving the subpoena, a $22 records processing fee, and a $34.98 fee charged by the deponent (which includes iCopy's 12% administrative fee). Doc. 40-1 at 21. The other two challenged invoices are similar. *Id.* at 23 (listing subpoena, deponent, and expedited service fees); *id.* at 42 (listing subpoena, records processing, and expedited service fees).

Two of those three categories of fees are reasonable. First, the subpoena fees of $46 or $48 are less than the U.S. Marshal's fee, which is $65 minimum per person served. *See* 28 C.F.R. § 0.114(a)(3); *Allen*, 2013 WL 1966363, at *3 (holding that a $45 "process server fee" was reasonable because it was less than the U.S. Marshal's minimum fee). Second, the fees charged by the deponents, while quite high, were likely unavoidable. Given that Mortera's medical records "were exclusively in the possession of specific medical providers, it is likely that [Target] had little choice but to pay the various' doctors going rates for record retrieval and delivery." *Arce v. Chi. Transit Auth.*, 2017 WL 714107, at *6 (N.D. Ill. Feb. 23, 2017), *aff'd*, 738 F. App'x 355 (7th Cir. 2018).

Target fails, however, to establish that the records processing fees—which were per-page charges of $0.35 or $0.38 (plus $0.05 per page for OCR) or flat fees of $20 or $22—are reasonable, particularly given that iCopy already charged fees for serving subpoenas and administrative fees for passing on the deponents' fees. Target asserts in its brief that those fees cover "following up to obtain the records, processing the records once received and producing them to [Target]." Doc. 44 at 6. But an assertion in a brief is not evidence. *See Mitze v. Colvin*, 782 F.3d 879, 882 (7th Cir. 2015) ("[A]ssertions in briefs are not evidence … ."); *In re Morris Paint & Varnish Co.*, 773 F.2d 130, 134 (7th Cir. 1985) ("Arguments and factual assertions made by counsel in a brief, unsupported by affidavits, cannot be given any weight."). And without knowing what "processing" iCopy did, it is impossible to determine whether it was a type of processing for which costs are recoverable and, if so, whether the amounts charged were reasonable. *See Allen*, 2013 WL 1966363, at *5 ("Costs may be awarded under § 1920(4) for electronically scanning and processing documents, as the electronic scanning of documents is the modern-day equivalent of exemplification and copies of paper. Such costs are limited, however,

6

to processing that is the equivalent of 'exemplification or making copies,' and do not encompass work that goes beyond merely converting a paper version into an electronic document.") (citations and some internal quotation marks omitted) (collecting cases).  Indeed, the only specifically identified type of processing, OCR, is not recoverable.  *See id*. at *5-6 (holding that costs incurred for OCR are not recoverable because OCR goes beyond "merely converting a paper version into an electronic document" and substitutes for work attorneys or support staff would otherwise have to perform) (internal quotation marks omitted).  Target thus has not met its burden of establishing that iCopy's processing fees were reasonable.  *See Montanez*, 755 F.3d at 559; *Harper*, 223 F.3d at 605; *Marshall*, 2016 WL 2755324, at *6.  The bill of costs is therefore reduced by $412.07, which reflects iCopy's flat processing fees ($184) and the per-page OCR and processing fees of $0.40 and $0.43 it charged in two instances ($228.07).

As to the $330.00 Target paid iCopy for expedited services, Target does not respond to Mortera's objection, thus forfeiting the point.  *See Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in [a] response … .");  *G & S Holdings*, 697 F.3d at 538.  In any event, Target does not offer any evidence establishing that it was reasonably necessary to expedite nearly every subpoena, and thus cannot meet its burden as to those costs.  *See Montanez*, 755 F.3d at 559; *Harper*, 223 F.3d at 605; *Marshall*, 2016 WL 2755324, at *6.  The bill of costs is therefore reduced by $330.00.

Finally, Mortera objects, Doc. 43 at 3, to the $62.00 Target paid iCopy for three "no records affidavit[s]."  Doc. 40-1 at 31, 32, 74 (capitalization altered).  Target asserts in its brief that those charges are for "follow[ing] up with the medical provider, process[ing] [the provider's] response and provid[ing] [Target] with documentation reflecting the lack of records."

Doc. 44 at 7. As noted, "assertions in briefs are not evidence." *Mitze*, 782 F.3d at 882. Target accordingly has not met its burden to show that the no-records costs are recoverable. *See Montanez*, 755 F.3d at 559; *Harper*, 223 F.3d at 605; *Marshall*, 2016 WL 2755324, at *6. The bill of costs is therefore reduced by $62.00.

In sum, the court reduces the iCopy costs of $1,878.80 by $804.07 ($412.07 + $330.00 + $62.00), leaving $1,074.73. Mortera does not challenge Target's claimed $867.00 in "[f]ees of the Clerk" and $1,200.26 in fees for "transcripts necessarily obtained for use in the case." Doc. 40 at 1. He thus forfeits any objection to those costs. *See G & S Holdings*, 697 F.3d at 538; *Alioto*, 651 F.3d at 721. That makes the total cost award $3,141.99 ($1,074.73 + $867.00 + $1,200.26).

## Conclusion

Mortera's objections to Target's bill of costs are sustained in part and overruled in part. Target's bill of costs of $8,969.21 is reduced by $5,827.22 ($5,022.70 for the Record Copy Services costs, $804.07 for the iCopy costs, and the $0.45 discrepancy between the claimed amount and the invoices noted above), resulting in a cost award of $3,141.99.

April 9, 2019

_____
United States District Judge

8